23-cv-02171

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

In re Voyager Digital Holdings, Inc., et al., Debtors

UNITED STATES OF AMERICA, ET AL., Appellants,

v.

VOYAGER DIGITAL HOLDINGS, INC., ET AL., Appellees.

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
APPELLANTS' EMERGENCY MOTION FOR STAY**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

LAWRENCE H. FOGELMAN
JEAN-DAVID BARNEA
PETER ARONOFF
Assistant United States Attorneys

United States Attorney's Office
Southern District of New York
86 Chambers Street, Third Floor
New York, NY 10007

WILLIAM K. HARRINGTON
United States Trustee, Region 2
LINDA A. RIFFKIN
Assistant United States Trustee

Department of Justice
Office of the United States Trustee
One Bowling Green
New York, NY 10004

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
BETH A. LEVENE
ANDREW BEYER
SUMI K. SAKATA
Trial Attorneys

Department of Justice
Executive Office for United States Trustees
441 G Street, N.W., Suite 6150
Washington, DC 20530

**Table of Contents**

ARGUMENT ........................................................................................................................... 1

   I.   The Government Will Likely Succeed on the Merits .......................................................... 3

      A.    There Is No Statutory Basis for Exculpation ................................................................. 3

      B.    No Court Has Approved Exculpation Against the Government Over the
Constitutional Objections Raised Here ................................................................................ 7

   II.    The Balance of Harms Weighs in Favor of a Stay ......................................................... 9

   CONCLUSION ...................................................................................................................... 10

## Table of Authorities

Page(s)

**Cases**

*Blixseth v. Credit Suisse*,
  961 F.3d 1074 (9th Cir. 2020) ................................................................................................. 8

*Czyzewski v. Jevic Holding Corp.*,
  137 S. Ct. 973 (2017) ............................................................................................................... 4

*Garvin v. Cook Invs. NW, SPNWY, LLC*,
  922 F.3d 1031 (9th Cir. 2019) ................................................................................................. 8

*In re Aegean Marine Petroleum Network Inc.*,
  599 B.R. 717 (S.D.N.Y. 2019) ................................................................................................. 4

*In re Airadigm Commc'ns, Inc.*,
  519 F.3d 640 (7th Cir. 2008) ................................................................................................... 9

*In re Am. Coastal Energy Inc.*,
  399 B.R. 805 (Bankr. S.D. Tex. 2009) .................................................................................... 6

*In re Buttonwood Partners, Ltd.*,
  111 B.R. 57 (Bankr. S.D.N.Y. 1990) ...................................................................................... 6

*In re CMC Heartland Partners*,
  966 F.2d 1143 (7th Cir. 1992) ................................................................................................. 6

*In re Dairy Mart Convenience Stores, Inc.*,
  351 F.3d 86 (2d Cir. 2003) ...................................................................................................... 5

*In re Enron Corp.*,
  326 B.R. 497 (S.D.N.Y. 2005) ................................................................................................. 8

*In re Food City, Inc.*,
  110 B.R. 808 (Bankr. W.D. Tex. 1990) .................................................................................. 5

*In re Granite Broad. Corp.*,
  369 B.R. 120 (S.D.N.Y. 2007) ................................................................................................. 8

*In re Highland Cap. Mgmt., LP*,
  48 F.4th 419 (5th Cir. 2022) .................................................................................................... 7

*In re Irving Tanning Co.*,
  496 B.R. 644 (B.A.P. 1st Cir. 2013) ....................................................................................... 6

*In re LATAM Airlines Grp. S.A.*,
  No. 20-11254 (JLG), 2022 WL 2206829 (Bankr. S.D.N.Y. June 18, 2022) ........................... 6

*In re Oneida Ltd.*,
  351 B.R. 79 (Bankr. S.D.N.Y. 2006) ...................................................................................... 8

*In re Purdue Pharma, L.P.*,
  635 B.R. 26 (S.D.N.Y. 2021) ......................................................................................... 3, 4, 6

*In re PWS Holding Corp.*,
  228 F.3d 224 (3d Cir. 2000) .................................................................................................... 8

*In re W. Real Est. Fund, Inc.*,
  922 F.2d 592 (10th Cir. 1990) ................................................................................................. 7

*Law v. Siegel*,
  571 U.S. 415 (2014) ................................................................................................................. 4

ii

*Midlantic Nat'l Bank v. N.J. Dep't of Envtl Prot.*,
  474 U.S. 494 (1986)..................................................................................................6
*Tenn. Student Assistance Corp. v. Hood*,
  541 U.S. 440 (2004)..................................................................................................4
*United States v. Security Indus. Bank*,
  459 U.S. 70 (1982)....................................................................................................3

**Statutes**

11 U.S.C. § 105................................................................................................................4
11 U.S.C. § 362(b)(4)......................................................................................................6
11 U.S.C. § 521................................................................................................................4
11 U.S.C. § 524(g)...........................................................................................................4
11 U.S.C. § 1123..............................................................................................................6
11 U.S.C. § 1125(e)..........................................................................................................4
11 U.S.C. § 1129(a)(3)......................................................................................................5
11 U.S.C. § 1142(a)..........................................................................................................5
28 U.S.C. § 959(b)...........................................................................................................6

The Government respectfully submits this reply memorandum of law in further support of its emergency motion for a stay pending resolution of this appeal.[1]

## ARGUMENT

The Exculpation Provision is improper because it lacks legal basis and unconstitutionally deprives the United States of the ability to fulfill its responsibility to enforce the law and protect the public. The risks are amplified because this bankruptcy case concerns the cryptocurrency industry, which has been rife with fraud and abuse.

The Government is likely to prevail in this appeal because there is no statutory authority for a bankruptcy court to demand that the Government affirmatively demonstrate that proposed transactions are illegal, on penalty of prospectively releasing the parties thereto from statutory liability to the Government for the implementation of those transactions. But that is what the Bankruptcy Court did, finding that the four months between the initial plan proposal and the confirmation hearing gave the Government a "full and fair opportunity to object" to the transactions, or else suffer the Exculpation Provision. Ex. 11 to Bowen Decl., Confirmation Decision at 13. The Bankruptcy Court thus improperly arrogated to itself the powers of the Executive Branch in determining how to enforce the law, and of the Legislative Branch by abrogating statutes of limitations and liability standards imposed by Congress.

Yet the Debtors baldly admit that they aim to thwart this Court's consideration of these substantial statutory and constitutional questions. As Debtors informed the Bankruptcy Court: "Our position is once Your Honor gives us authority to go forward with the transaction, we're going to do that. And then we're going to argue that appeals are equitably moot…" Fogelman Decl. Ex. E, March 15, 2023, Transcript at 34-35. That could happen as soon as this Friday.

---

[1] The Government uses capitalized terms defined in its opening brief.

Contrary to the Debtors' overwrought assertions, the Government is seeking to protect its general power to enforce the law and protect the public, not to "make something up after the fact" or "l[ie]-in-wait to prosecute." Debtors' Opposition Brief ("Opp.") at 3, 27. The Government acknowledges that a party who engages *only* in conduct expressly authorized by the Bankruptcy Court may well have an affirmative defense (including potentially a form of qualified immunity) in a future action based on the Bankruptcy Court's findings and orders, or may argue that it lacks the requisite *mens rea* because it was acting in furtherance of a court order. But Debtors have no answer to the argument that these defenses can and should be raised only if an enforcement action is actually brought, before the tribunal hearing that action. Gov. Mem. 26-29. Debtors readily acknowledge that the Exculpation Provision is "forward looking," Opp. at 29, but nonetheless take issue with the Government's inability to know in advance whether anyone will violate federal law in carrying out these transactions. *Id.* at 24. A court or other tribunal in a subsequent enforcement action can weigh both the Bankruptcy Court's orders and the actual facts and circumstances of the asserted offense to determine whether anyone has violated federal law and whether any affirmative defense applies.

The Debtors have also failed to rebut the Government's explanation of the irreparable harm from the loss of its ability to protect the public, the constitutional injury stemming from the Bankruptcy Court's failure to respect the separation of powers, and the danger that this appeal may be equitably mooted if a stay is not granted. Gov. Mem. at 32-34. While the Debtors and the Official Committee of Unsecured Creditors ("Committee") allege harms that would result if the business transactions between Debtors and Binance.U.S. are not consummated, Opp. at 36-38, there is a simple solution: this Court can allow the transactions to proceed—thereby avoiding the alleged harm to customers—and stay only the Exculpation Provision itself. If the Debtors

ultimately prevail in this appeal, the provision will retroactively protect them, and if they do not

prevail, it will be because the provision is unlawful and the Exculpated Parties were never entitled

to its protections. It would be manifestly contrary to public policy if the Exculpated Parties could

be released from criminal, civil, and regulatory liability simply because a business transaction took

place before the merits of this appeal could be decided.

I.    **The Government Will Likely Succeed on the Merits**

A.  **There Is No Statutory Basis for Exculpation**

Debtors have failed to identify any Bankruptcy Code provision that permits a bankruptcy

court to divest the Government of its power to enforce the law by granting a release such as the

Exculpation Provision. And with respect to Debtors' citation of general grants of authority to

bankruptcy courts, such statutes should not be read to implicitly authorize an Article I court to

disrupt the Government's law enforcement powers, given the serious constitutional issues such an

interpretation would create. *See United States v. Security Indus. Bank*, 459 U.S. 70, 78 (1982)

(when one statutory construction raises "substantial doubt" about constitutionality, it is a "cardinal

principle" of statutory construction to "ascertain whether a construction of the statute is fairly

possible by which the constitutional question may be avoided" (quotation marks omitted)).

Perhaps in light of this Court's recent decision that the Bankruptcy Code provides no

authority for releasing any non-debtor, *In re Purdue Pharma, L.P.*, 635 B.R. 26, 78 (S.D.N.Y.

2021), Debtors argue that exculpation is different from other types of non-debtor releases. Opp. at

29. There are some differences in coverage: the Exculpation Provision here limits the liability of

debtors and non-debtors for their conduct during the bankruptcy and for engaging in future

transactions contemplated by the plan, whereas the release in *Purdue* was for pre-petition conduct

by the non-debtor Sackler family. But the fundamental analysis is identical: bankruptcy courts may

not provide *anyone* with a release absent express statutory authority for doing so.[2]

The Bankruptcy Code establishes a highly reticulated scheme for the equitable adjustment of the debtor-creditor relationship. Debtors must comply with a host of requirements, *see, e.g.*, 11 U.S.C. § 521, and apply substantially all of their assets to satisfy their creditors' claims, *see generally id.* §§ 522, 541. In exchange, they are "release[d]" from liability "with respect to any discharged debt." *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004). Beyond the discharge available to non-liquidating debtors, Congress has enacted only one provision defining conduct for which persons are "not liable," and it pertains to solicitation of votes for a plan. 11 U.S.C. § 1125(e). Likewise, the Code only permits a non-debtor release in only one context—asbestos-related liabilities. 11 U.S.C. § 524(g). A bankruptcy court cannot expand this legislative grant. *See Law v. Siegel*, 571 U.S. 415, 424 (2014) ("The Code's meticulous—not to say mind-numbingly detailed—enumeration of exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional exceptions."). "[W]ere [Congress] to intend a major departure" from the fundamental principle that bankruptcy exists to adjust the debtor-creditor relationship, and not rights between third parties, "more than simple statutory silence" is required. *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 984 (2017).

Debtors point to 11 U.S.C. § 105, Opp. at 27, which allows bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." But as the Second Circuit has confirmed, this is simply the power "to exercise equity in

---

[2] Debtors bizarrely argue that *Purdue*'s citation to *In re Aegean Marine Petroleum Network Inc.*, 599 B.R. 717 (S.D.N.Y. 2019), on a point relating to involuntary third-party releases suggests that the court "*agreed* with the debtors" that exculpation and third-party release "are materially different." Opp. at 30 (emphasis in original). That argument does not make sense, as *Purdue* cited *Aegean* mainly to note that third-party releases are illegal, and did not cite or engage with *Aegean*'s separate discussion of exculpation. *See In re Purdue Pharma, L.P.*, 635 B.R. at 37, 82, 110.

carrying out" the express provisions of the Bankruptcy Code, "rather than to further the purposes of the Code generally, or otherwise to do the right thing." *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003). Debtors also cite 11 U.S.C. § 1142(a), Opp. at 28, which merely provides that the "debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court." It does not grant authority to a bankruptcy court to release a party from liability to anyone.

Debtors' reference to 11 U.S.C. § 1129(a)(3) is also misplaced, Opp. at 28, as this statute addresses the requirement that a "plan has [been] been proposed in good faith and not by any means forbidden by law," but does not release anyone from liability. The reference to "means forbidden by law" does not mean that a bankruptcy court's confirmation order pre-approves every conceivable regulatory consequence of contemplated transactions. It does not "convert the bankruptcy judge into an ombudsman without portfolio, gratuitously seeking out possible 'illegalities' in every plan," *In re Food City, Inc.*, 110 B.R. 808, 813 (Bankr. W.D. Tex. 1990). That would be impossible, would usurp the law-enforcement and regulatory role of federal and state governments, and would improperly suggest that a bankruptcy court can adjudicate—and resolve—every legal and regulatory issue a complex transaction might raise, all on the compressed timeframe of a bankruptcy case. And it would be disastrous for debtors and regulators:

> Such a rule would place an onerous and unnecessary burden on the debtor, on those charged with enforcing laws and on the court. All regulatory agencies (and there are thousands) would have to participate in all chapter 11 cases, introducing extraordinary delay into the system and imposing an impossible burden on the agencies. Moreover, a rule which requires a debtor to affirmatively represent in its plan and disclosure statement that the plan does not violate *any* law imposes an unrealistic due diligence burden upon both the debtor and debtor's counsel.

*Id.*[3]

---

[3] That is not to say that a government agency may not object to a plan that it recognizes as contemplating a plainly illegal transaction, just that it cannot be required to do so, and that its decision not to does not justify sweeping prospective immunity.

Courts interpreting § 1129(a)(3) instead understand this requirement as relating "more to the process of plan development than the content of the plan." *In re LATAM Airlines Grp. S.A.*, No. 20-11254 (JLG), 2022 WL 2206829, at *33 (Bankr. S.D.N.Y. June 18, 2022), *corrected,* 2022 WL 2541298 (Bankr. S.D.N.Y. July 7, 2022). Thus, the debtors cannot engage in illegal conduct "in connection with obtaining confirmation." *In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 60 (Bankr. S.D.N.Y. 1990); *accord In re Irving Tanning Co.*, 496 B.R. 644, 659 (B.A.P. 1st Cir. 2013). Accordingly, nothing in this provision permits a bankruptcy court to strip the Government of its police and regulatory responsibilities to enforce the law even with respect to the implementation of transactions contemplated by a plan.[4]

Congress has been clear that debtors are not excused from general regulatory requirements. They must comply with the law like everyone else. *See* 28 U.S.C. § 959(b); *In re Am. Coastal Energy Inc.*, 399 B.R. 805, 810 (Bankr. S.D. Tex. 2009) ("Bankruptcy debtors are no different from any citizen in that they must comply with state and federal laws."). And Congress has given special solicitude to governmental police and regulatory proceedings, exempting them from the automatic stay barring certain actions during bankruptcies. *See* 11 U.S.C. § 362(b)(4); Gov. Br. at 22. Congress does not intend debtors to be exempt from regulation, and has "repeatedly expressed its legislative determination that the [bankruptcy] trustee is not to have *carte blanche* to ignore nonbankruptcy law." *Midlantic Nat'l Bank v. N.J. Dep't of Envtl Prot.*, 474 U.S. 494, 502 (1986). The same rule applies when a bankruptcy ends: the status of "[h]aving been a debtor in bankruptcy . . . authorize a firm to operate a nuisance today, or otherwise excuse it from complying with laws of general application." *In re CMC Heartland Partners*, 966 F.2d 1143, 1146 (7th Cir. 1992).

---

[4] The Committee also relies on 11 U.S.C. § 1123 as a basis for statutory authority for a release, UCC Br. at 35, but does not address the Government's arguments why it provides no basis for exculpation. *See* Gov. Br. at 21-22; *see also In re Purdue Pharma, L.P.*, 635 B.R. at 106-07.

**B.  No Court Has Approved Exculpation Against the Government Over the Constitutional Objections Raised Here**

The Exculpation Provision disrupts the Executive Branch's constitutional duty to execute the laws and its discretion to decide how to do so. It also effectively rewrites countless statutes by either imposing an artificial timeline shorter than the applicable statute of limitations, and alters the liability standard Congress chose. *See* Govt. Br. 2, 25-26, 33-34. Moreover, by purporting to bind the Government in future actions against non-debtors based on conduct that has not yet occurred, the provision improperly bypasses the Government's sovereign immunity, violates due process, and transcends the constitutional limits on the judicial power. *Id.* at 24.

Unsurprisingly, we are aware of no judicial decision allowing exculpation against the Government over these objections. Most courts approving exculpation rely on a policy rationale—avoiding sour-grapes litigation between parties to the commercial deals embodied in a bankruptcy plan—that has nothing to do with regulators such as the Government.

Two courts of appeals prohibit exculpation outright: the Tenth Circuit, *see In re W. Real Est. Fund, Inc.*, 922 F.2d 592, 600 (10th Cir. 1990) (also prohibiting third-party releases), and the Fifth Circuit, which recently confirmed its view that broad exculpation of non-debtors is impermissible, as it "runs afoul" of the "statutory bar on non-debtor discharge" in Section 524(e), *In re Highland Cap. Mgmt., LP*, 48 F.4th 419, 435-38 (5th Cir. 2022).[5]

Despite the lack of statutory authority for them, as discussed above, several other courts of appeals have permitted certain forms of exculpation. But they generally limit such relief to acts the debtor and the creditors' committee undertake during the bankruptcy proceeding itself, based

---

[5] However, that court is among those that have concluded that Section 1103(c) of the Bankruptcy Code confers a species of qualified immunity on certain estate fiduciaries. *See id.* at 437. Such qualified immunity, to the extent it exists, is limited to the debtor, the creditors' committee, and its members, and covers only conduct within the scope of their respective statutory duties. *See id.* at 437-38; Gov Mem. at 27 n.9 (discussing Section 1103(c)).

on the notion that the participants in that process should not later sue each other, having already

litigated or settled before the bankruptcy court. *See Blixseth v. Credit Suisse*, 961 F.3d 1074, 1083

(9th Cir. 2020) (allowing exculpation of debtors and members of the creditors' committee for "acts

committed during the process of developing and confirming a Chapter 11 plan"); *see id*. at 1084

(purpose of exculpation is to "allow the settling parties . . . to engage in the give-and-take of the

bankruptcy proceeding without fear of subsequent litigation over any potentially negligent actions

in those proceedings"); *In re PWS Holding Corp*., 228 F.3d 224, 246-47 (3d Cir. 2000)

(considering Section 1103(c) as "setting forth the applicable standard of liability" for debtors,

committee members, and their professionals, by "limit[ing] [their] liability . . . to willful

misconduct or ultra vires acts," "in the event that they were sued for their participation in the

reorganization"). But the rationale of preventing bankruptcy participants from relitigating resolved

issues after plan confirmation, a rationale also cited in this district, *see* Gov. Br. at 23, has no

application to the Government enforcing its police and regulatory powers. Moreover, as the Ninth

Circuit has noted, "confirmation of a plan does not insulate debtors from prosecution for criminal

activity, even if that activity is part of the plan itself." *Garvin v. Cook Invs. NW, SPNWY, LLC*,

922 F.3d 1031, 1036 (9th Cir. 2019). Debtors have not offered any explanation for how a

bankruptcy court with no authority to hear a criminal case could somehow release parties from

criminal liability. *See* Gov. Br. at 22-23.[6]

---

[6] As for the district courts in this circuit that have referred to exculpation clauses as "reasonable
and customary," or "standard in this district," Opp. at 18-19, one of those cases dismissed as
equitably moot a challenge to such a provision and merely quoted the bankruptcy court's
characterization of the provision, *see In re Enron Corp.*, 326 B.R. 497, 504 (S.D.N.Y. 2005), while
the others only briefly if at all considered any objections to the appropriateness of exculpation, and
included no statutory or constitutional analysis, *see In re Oneida Ltd.*, 351 B.R. 79, 94 n.22 (Bankr.
S.D.N.Y. 2006); *In re Granite Broad. Corp.*, 369 B.R. 120, 139 (S.D.N.Y. 2007). Debtors cite no
case in this circuit where the Government has been precluded from asserting its police and
regulatory powers based on an exculpation clause.

We are aware of only one case expressly applying exculpation to a Government agency: *In re Airadigm Commc'ns, Inc.*, 519 F.3d 640, 655 (7th Cir. 2008). Analyzing the question as whether third-party releases were permissible, the Court incorrectly determined that they were, including the exculpation at issue, which applied to the Federal Communications Commission. *Id.* at 655-57. But the FCC did not raise the constitutional questions the Government now raises, and the Seventh Circuit did not consider (much less reject) them, or construe the Code to avoid them.[7]

## II.     The Balance of Harms Weighs in Favor of a Stay

Debtors have failed to rebut the substantial harm the Government will endure if it is forbidden from enforcing federal law against parties for conduct that has not yet occurred, nor the harm caused by the Bankruptcy Court's infringement on the powers of the Executive Branch to enforce the law and the Legislative Branch to determine applicable statutes of limitation and liability standards. Likewise, if Debtors equitably moot this appeal, it would substantially prejudice the Government's ability to vindicate its right to enforce the law. *See* Gov. Mem. at 31-34.

The Government proposes that instead of staying the Confirmation Order in its entirety, this Court could stay only the Exculpation Provision until the appeal is resolved. This would address Debtors' concern that a stay of the entire Confirmation Order would "halt all customer recoveries in their tracks," Opp. at 5, as Debtors could proceed with providing these recoveries. While Debtors claim "no one will take the risk" of proceeding absent exculpation, *id.*, these assertions, unsupported by testimony or other evidence, defy belief. Every day, parties engage in substantial commercial transactions—including those involving cryptocurrency—without the benefit of preemptive releases from regulatory enforcement. Businesses large and small decide

---

[7] Even then, the court expressly found that the provision preserved certain non-monetary regulatory authority, since it did not allow for the exculpated party to "use this limitation as a way of skirting the FCC's regulations regarding the use, possession, or transfer of licenses." *Id.* at 657.

whether to adopt practices or engage in transactions without demanding that they be released *ex ante* from potential liability to the Government if those practices—or the specific means they choose to use to implement them—violate the law. If the Exculpation Provision is ultimately upheld, the Exculpated Parties will receive the benefit of it after all. If not, then this provision is illegal and they never should have had the benefit of it, but will nonetheless be able to assert any available affirmative defenses based on the Bankruptcy Court's orders in the event an enforcement proceeding is ever brought.

Accordingly, the balance of harms tips decisively in the Government's favor.

## CONCLUSION

WHEREFORE, the Government respectfully asks this Court to enter: (1) an immediate administrative stay pending decision on this motion, and (2) a stay of the Confirmation Order (or, at a minimum, of the Exculpation Provision) pending appeal. If this Court grants no other relief, the Government further requests a two-week administrative stay to allow the Government time to determine whether to seek relief in the Second Circuit and for that court to address any such application.

Dated: March 21, 2023
      New York, New York

<div style="margin-left:40%">

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By:   */s/ Peter Aronoff*
LAWRENCE H. FOGELMAN
JEAN-DAVID BARNEA
PETER ARONOFF
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:   (212) 637-2800
Lawrence.Fogelman@usdoj.gov
Jean-David.Barnea@usdoj.gov
Peter.Aronoff@usdoj.gov

</div>

By:      /s/ *Linda A. Riffkin*
WILLIAM K. HARRINGTON
United States Trustee, Region 2
LINDA A. RIFFKIN
Assistant United States Trustee
RICHARD C. MORRISSEY
MARK BRUH
Trial Attorneys

U.S. Department of Justice
Office of the United States Trustee –
NY Office
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, New York 10004-1408
(212) 510-0500