DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
By: JEAN-DAVID BARNEA
     PETER ARONOFF
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2679/2697
E-mail: jean-david.barnea@usdoj.gov
      peter.aronoff@usdoj.gov

| Hearing Date: | **March 6, 2023** |
|---|---|
| Hearing Time: | **10:00am** |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*, | Case No. 22-10943 (MEW) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF THE UNITED STATES OF AMERICA**
**TO CONFIRMATION OF DEBTORS' CHAPTER 11 PLAN**

JEAN-DAVID BARNEA
PETER ARONOFF
Assistant United States Attorneys
*Of Counsel*

# CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND .................................................................................................... 3

ARGUMENT ........................................................................................................ 9

   I.    THE EXCULPATION AND INJUNCTION AGAINST GOVERNMENTAL UNITS
      IN THE PLAN AND PROPOSED ORDER ARE IMPERMISSIBLE ......................... 9

     A.   The Bankruptcy Code Does Not Authorize Prospective "Releases" of the Debtor's
     Post-Confirmation Conduct ................................................................... 11

     B.   The Bankruptcy Code Does Not Authorize Third-Party Releases, Including Through
     Exculpation ......................................................................................... 12

     C.   The United States Has Not Waived Its Sovereign Immunity Over Exculpation or
     Prospective Releases............................................................................. 19

     D.   The Court Lacks Constitutional Authority to Issue the Nondebtor Relief or
     Prospective Debtor Relief...................................................................... 22

     E.   The Court Lacks Authority to Issue Nondebtor Releases Because They Exceed the
     Court's Statutory Jurisdiction ................................................................ 23

     F.   The Court Lacks Authority to Issue a Final Order on the Nondebtor Relief
     Provisions Because They Concern Only Non-Core Matters .................................. 26

     G.   The Exculpation Provisions Violate Fundamental Notice Requirements..................... 28

     H.   The Exculpation Does Not Meet *Metromedia* or Any Other Applicable Standard ....... 30

CONCLUSION ................................................................................................... 32

The United States of America (the "Government"), by and through its attorney, Damian

Williams, United States Attorney for the Southern District of New York, respectfully submits this

objection to confirmation of the proposed Third Amended Joint Chapter 11 bankruptcy plan (the

"Plan") filed by Voyager Digital Holdings, Inc., and certain affiliates (together, the "Debtors"),

Dkt. No. 1138,[1] inasmuch as the Plan or the proposed order confirming it, Dkt. No. 1140 (the

"Proposed Order"), contain improperly broad exculpation language that purports to bind the

Government from exercising its police and regulatory powers against the Debtors and various third

parties.

## PRELIMINARY STATEMENT

The proposed Plan and Proposed Order cannot be entered because they contain eleventh-

hour additions of exculpation language (from which the Government is not carved out) that is

without basis in the Bankruptcy Code and, if entered, would improperly bar governments,

including the United States, from enforcing the law. The exculpation provisions in the Plan and

Proposed Order would peremptorily foreclose the rights of Governmental Units (and others)

against the Debtors and nondebtors, including their rights to enforce important federal and state

laws that protect public health, safety, and welfare. Yet the Bankruptcy Code provides no authority

for such an exculpation provision, any more than it supplies authority for third-party releases more

generally. *See In re Purdue Pharma, L.P.*, No. 21 Civ. 7532 (CM), 2021 WL 5979108, at *47-70

(S.D.N.Y. Dec. 16, 2021). Accordingly, the Court should strike the exculpation provision from the

Plan.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224);
and Voyager Digital, LLC (8013).

In addition to lack of statutory authority to approve the exculpation provision in the Plan and Proposed Order, the Court should strike it for several additional reasons. First, Congress has not waived the United States' sovereign immunity from third-party releases—including exculpation; second, there is no case or controversy regarding potential future suits for conduct covered by the exculpation language; third, the Court lacks subject-matter jurisdiction to approve the exculpation provisions; fourth, the exculpation provisions violate due process and fundamental notice requirements; and fifth, even if, despite the text of the Bankruptcy Code, a third-party release labeled as "exculpation" could in some circumstances be justified under the factors of *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005), to the extent that case remains the law of this Circuit, Debtors have failed to make any showing that this case presents a unique circumstance justifying such extraordinary relief. The Plan thus cannot be confirmed as presented.

On March 2, 2023, on the morning the confirmation hearing began, after having previously proposed to carve the Government out of any exculpation or similar provision of the Plan, the Debtors proposed for the first time to substantially restrict the Government's carve-out and to restrict the ability of the Government to enforce its legal and regulatory authority as against the Debtors and other participants in transactions contemplated by the Plan. The Government immediately filed a letter objection and asked the Court for an opportunity to submit a full brief on the issue, should the Court consider such relief to be proper.

On March 6, 2023, as part of the confirmation hearing in this case, the Court held a brief oral argument on the Government's objection (and those of other governmental authorities) to the overbroad exculpation language in the Proposed Order that had been provided to the Government for the first time just a few days prior. At the hearing, the Court stated it would approve a broad exculpation provision, consistent with its decision in *In re Aegean Marine Petroleum Network*

*Inc.*, 599 B.R. 717, 725 (Bankr. S.D.N.Y. 2019), insulating Debtors and others from all prospective governmental liability in connection with their consummation of the transactions contemplated in the Plan and related documents. Debtors indicated that they would propose different language consistent with *Aegean*, although the Government has not yet seen this proposed language. The Government noted its continued objection to this course of action and reserved all rights pending review of the final proposed language.

## **BACKGROUND**

1. On July 6, 2022, Debtors filed these Chapter 11 cases. *See* Petition, Dkt. No. 1.

2. The cases are being jointly administered. *See* Dkt. No. 18.

3. On March 5, Debtors filed their Third Amended Joint Chapter 11 Plan. *See* Dkt. No. 1138.

4. The Plan provides that each "Exculpated Party" is "exculpated" from:

> any Cause of Action for any act or omission arising on or after the Petition Date and prior to the Effective Date based on the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation or filing, or consummation of the Disclosure Statement, the Plan, the Special Committee Investigation, any Definitive Documents or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), except for Causes of Action related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan; provided that nothing in the Plan shall limit the liability of professionals to their clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009).

Plan Article VIII(C). The proposed Plan further concludes that:

> To the extent that any Cryptocurrency is deemed to be a "security" by the SEC or any Governmental Unit, distribution of such Cryptocurrency shall have been done in good faith and in compliance with all applicable laws, rules, and regulations and the Exculpated Parties shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the distribution of Cryptocurrency whether such Cryptocurrency is deemed to be a "security" or otherwise.

*Id.* It also states that:

> The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

*Id.* Notably, the language does not limit the persons whose claims are released to a defined set of individuals or entities, or even to creditors of the Debtors—instead, exculpation is provided as against the world to the Exculpated Parties.[2]

5. The definition of "Exculpated Parties" includes various major participants in this case, including (subject to capacity limitations) the "(a) each of the Debtors; (b) the Committee, and each of the members thereof, solely in their capacity as such; (c) each of the Released Professionals; (d) each of the Released Voyager Employees; and (e) the Distribution Agent." *Id.* Article I(A)(77).

6. Debtors have proposed several versions of the Proposed Order in this case. Their first proposal, filed on February 28, 2023, ECF No. 1120, included language that would principally— and appropriately—carve the Government out of any exculpation or releases in the plan:

> 141. **Governmental Units.** Nothing in this Confirmation Order or the Plan shall effect a release of any claim by the United States or any of its agencies arising under the Internal Revenue Code, the environmental laws or any civil or criminal laws of the United States, or under any rules or regulations enforced by the United States or any of its agencies against the Released Parties, nor shall anything in the

[2] The U.S. Trustee's Office has objected to the Plan's broad exculpation provisions. Dkt. No. 1085.

Confirmation Order or the Plan enjoin the United States from bringing any claim, suit, action or other proceedings against the Released Parties for any liability for any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any civil or criminal laws of the United States, or under any rules or regulations enforced by the United States or any of its agencies, nor shall anything in the Confirmation Order or the Plan exculpate any such party from any liability to the United States or any of its agencies, arising under the Internal Revenue Code, the environmental laws or any civil or criminal laws of the United States, or under any rules or regulations enforced by the United States or any of its agencies; *provided, however*, that nothing in this Confirmation Order or the Plan shall modify in any respect the relief previously granted in the Bar Date Order and thus no person or entity, including the United States or any of its agencies, can seek or receive a direct or indirect distribution of any property of the Debtors' estates unless they filed a Proof of Claim prior to the Governmental Bar Date.

7.    However, on March 2, 2023, on the morning the confirmation hearing began, the Debtors

for the first time added the problematic language at issue (highlighted below), which would undo

the Government carve-out they themselves had previously proposed, Dkt. No. 1130:

> 142. **Governmental Units.** Nothing in this Confirmation Order or the Plan shall effect a release by the United States, the States or any of their agencies of any claim arising under the Internal Revenue Code, the environmental laws or any civil or criminal laws of the United States or the States, or under any rules or regulations enforced by the United States, the States or any of their agencies against the Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States or the States from bringing any claim, suit, action or other proceedings against the Released Parties for any liability for any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any civil or criminal laws of the United States or the States, or under any rules or regulations enforced by the United States, the States or any of their agencies, nor shall anything in the Confirmation Order or the Plan exculpate any such party from any liability to the United States, the States or any of their agencies, arising under the Internal Revenue Code, the environmental laws or any civil or criminal laws of the United States or the States, or under any rules or regulations enforced by the United States, the States or any of their agencies; *provided, however*, that nothing in this Confirmation Order or the Plan shall modify in any respect the relief previously granted in the Bar Date Order and thus no person or entity, including the United States, the States or any of their agencies, can seek or receive a direct or indirect distribution of any property of the Debtors' estates unless they filed a Proof of Claim prior to the Governmental Bar Date; *provided, further*, **that the United States, the States, and their agencies may not, and will not, allege that the Restructuring Transactions are a violation of any rules or regulations enforced by the United States, the States or any of their agencies, nor will they bring**

**any claim against any Person[3] on account of or relating to the Restructuring Transactions.**[4]

143. Nothing in this Confirmation Order, the Disclosure Statement, the Plan, or the Asset Purchase Agreement releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Effective Date; or (iii) any liability to a Governmental Unit on the part of any non-Debtor **(except to the extent set forth in paragraphs 97 and 99 herein)**; provided, however, that nothing in this Confirmation Order or the Plan shall modify in any respect the relief previously granted in the Bar Date Order; *provided, further*, **that no Governmental Unit will allege that the Restructuring Transactions are a violation of any rules or regulations enforced by the United States, the States or any of their agencies, nor will they bring any claim against any Person on account of or relating to the Restructuring Transactions.** Nothing in this Confirmation Order, the Disclosure Statement, the Plan, or the Asset Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, without compliance with all applicable legal requirements.

---

[3] The Plan defines "Person" as having "the meaning set forth in section 101(41) of the Bankruptcy Code," Plan, Article I(A)(118)—which broadly includes:

[an] individual, partnership, and corporation, but does not include governmental unit, except that a governmental unit that—
(A) acquires an asset from a person—
    (i) as a result of the operation of a loan guarantee agreement; or
    (ii) as receiver or liquidating agent of a person;
(B) is a guarantor of a pension benefit payable by or on behalf of the debtor or an affiliate of the debtor; or
(C) is the legal or beneficial owner of an asset of—
    (i) an employee pension benefit plan that is a governmental plan, as defined in section 414(d) of the Internal Revenue Code of 1986; or
    (ii) an eligible deferred compensation plan, as defined in section 457(b) of the Internal Revenue Code of 1986 . . . .

11 U.S.C. § 101(41).
[4] The Plan defines the Restructuring Transactions as "those mergers, amalgamations, consolidations, reorganizations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtors and the Committee jointly determine to be necessary to implement the transactions described in this Plan, as described in more detail in Article IV.B herein and the Restructuring Transactions Memorandum." Plan, Article I(A)(140).

8.   As explained in the Government's letter brief filed the same day, the provisions purporting to bar Governmental Units from "alleg[ing]" that the Restructuring Transactions violate any federal or state law, or from bringing claims against any Person based on these transactions were entirely improper, as they would bar the Government and other governmental authorities from exercising their police and regulatory powers in the ordinary course. Dkt. No. 1132.

9.   The cross-references to Paragraphs 97 and 99 of the Proposed Order are also problematic because those provisions purport to "forever bar[], estop[] and permanently enjoin[]" various parties, including "governmental, tax and regulatory authorities," from:

> asserting against the Purchaser, any of the foregoing's affiliates, successors, or assigns, their property or the Acquired Assets, such persons' or entities' Liens, Claims, or interests in and to the Acquired Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Purchaser and each of its affiliates, successors, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser and each of its affiliates, successors, assets, or properties; (c) creating, perfecting, or enforcing any Lien or other Claim against the Purchaser and each of its affiliates, successors, assets, or properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Purchaser, its affiliates or its successors; or (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Confirmation Order, or the agreements or actions contemplated or taken in respect thereof.

*Id.* ¶ 97. Relatedly, Paragraph 99 purported to relieve the Purchaser from any liability or responsibility, "as a successor or otherwise (including under any theory of successor or vicarious liability of any kind or character or any other theory of law or equity, including any theory of antitrust, environmental successor or transferee liability, labor law, de facto merger, or substantial continuity (including under applicable Money Transmitter Requirements or any securities or commodities Laws of any Governmental Body)," for certain contractually defined Liabilities.

10. The Government thus objected to the Proposed Order because, rather than carving the Government out from the Plan's problematic exculpation provision as Debtors had originally

proposed, the newly added language improperly barred the Government from enforcing its laws and regulations in the ordinary course against the Debtors and third parties in connection with the Restructuring Transactions. Dkt. No. 1132; *see also* Dkt. Nos. 1134, 1135 (joinders by the Federal Trade Commission and the New Jersey Bureau of Securities in the Government's objection); Dkt. No. 1136 (similar objection by Texas state agencies). The Government also asked the Court, "to the extent [it] would entertain Debtors' proposal in this regard, which it should not," to provide the Government "an opportunity to submit a full brief and to be heard on this issue." *Id.*

11. On March 5, 2023, while the confirmation hearing was still ongoing, the Debtors filed a further revised Confirmation Order, Dkt. No. 1140, that includes the same language improperly seeking exculpation and releases as against the Government, in paragraphs 142 and 143 and enjoining the Government from enforcing the law.

12. The next day, on March 6, 2023, as part of the confirmation hearing, the Court held a brief oral argument on these objections, at which the Debtors offered to further revise the Proposed Order. However, at the hearing, the Court stated it would approve an exculpation provision, consistent with its decision in *In re Aegean Marine Petroleum Network Inc.*, 599 B.R. 717, 725 (Bankr. S.D.N.Y. 2019), insulating Debtors and others from prospective governmental liability in connection with their consummation of the transactions contemplated in the Plan and related documents. The Government noted its continued objection to this course of action and reserved all its rights pending review of the final proposed language, which it had not seen as of the filing of this objection.

## ARGUMENT

### I.  THE EXCULPATION AND INJUNCTION AGAINST GOVERNMENTAL UNITS IN THE PLAN AND PROPOSED ORDER ARE IMPERMISSIBLE

13. The United States objects to the provisions discussed above in the Plan and the Proposed Order because they improperly purport to immunize the Debtors and third parties from all future governmental liability with respect to certain actions relating to the Plan. Although framed as "exculpation," these provisions effect an involuntary release and an injunction against Governmental Units that exceed this Court's statutory and constitutional authority.

14. There is no basis to enjoin Governmental Units from enforcing the law. One can imagine any number of law or regulations Debtors and third parties may violate after the Plan is confirmed— Debtors and third parties may violate tax laws, environmental laws, securities laws, and criminal laws, among others, in connection with whatever steps are taken to effectuate the Restructuring Transactions. That the Court may deem it appropriate for the Debtors and third parties to undertake the Restructuring Transactions does not prospectively immunize any misconduct in which the Debtors and third parties engage while executing these transactions.

15. Indeed, this Court lacks any jurisdiction over criminal matters, much less the ability to bar criminal actions by the Government. *See, e.g.*, *In re Grabis*, No. 13-10669 (JLG), 2020 WL 7346467, at *12 n.71 (Bankr. S.D.N.Y. Dec. 11, 2020) ("The Court lacks subject matter jurisdiction to enforce state or federal criminal laws."); *In re Rae*, 436 B.R. 266, 275 (Bankr. D. Conn. 2010) ("As a matter of law, this Court lacks subject matter jurisdiction over alleged violations of criminal statutes.").

16. Nor, as another example, can this Court insulate Debtors and others from prospective tax enforcement. The Anti-Injunction Act deprives this Court of jurisdiction to grant the Debtors or third parties relief against the IRS's efforts to assess and collect federal taxes. This statute provides

that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a); *see also Randell v. United States*, 64 F.3d 101, 106 (2d Cir. 1995) ("In the context of tax assessments and collections the government's sovereign immunity has been codified by the Anti-Injunction Act."). Indeed, as the Supreme Court has held, the Act "could scarcely be more specific—'no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court [by any person].'" *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974) (quoting 26 U.S.C. § 7421(a)). The Court has explained that the "manifest purpose" of the Act "is to permit the United States to assess and collect taxes alleged to be due without judicial intervention." *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962). Moreover, to effectuate the Anti-Injunction Act's intended goal, courts have broadly construed section 7421(a) and have held that "it is applicable not only to the assessment and collection of taxes, but to activities which are intended to or may culminate in the assessment or collection of taxes as well." *Linn v. Chivatero*, 714 F.2d 1278, 1286-87 (5th Cir. 1983) (citations omitted); *see also United States v. Dema*, 544 F.2d 1373, 1376 (7th Cir. 1976); *Hecht v. United States*, 609 F. Supp. 264,267 (S.D.N.Y. 1985); *Davidson v. Comm'r*, 589 F. Supp. 158, 161 (S.D.N.Y. 1984).

17. This Court similarly lacks jurisdiction to preemptively enjoin any other exercise of the Government's regulatory authority, especially with regard to actions that have not yet occurred. And the Debtors cite no provision of the Bankruptcy Code or other law that would permit the Court to enjoin the Government from enforcing the law as to the Restructuring Transactions or other future conduct, or to grant this broad release to Debtors and third parties.

18. While some courts may consider certain participants in bankruptcy proceedings to be protected by a species of qualified immunity for undertaking transactions specifically approved by

the bankruptcy court, this may not be accomplished by preemptively enjoining enforcement of the entire body of federal (and state) law as against such parties. Rather, such parties may assert affirmative defenses in any future enforcement proceedings on principles such as res judicata, collateral estoppel, and the bankruptcy-related qualified immunity (to the extent it exists) that some courts recognize. Such affirmative defenses, if asserted, are appropriately considered by the tribunal before which any such enforcement action is brought. This Court cannot, and should not, anticipatorily provide relief to these parties at this time by enjoining the enforcement of federal and state law, for several related reasons.

### A. The Bankruptcy Code Does Not Authorize Prospective "Releases" of the Debtor's Post-Confirmation Conduct

19. The Bankruptcy Code provides for the discharge of a debtor in a non-liquidating Chapter 11 case against pre-petition claims by creditors. *See* 11 U.S.C. § 1141(d). Nothing more. The Code does not permit a Court to prospectively immunize a debtor from liability for its post-petition, post-plan-confirmation acts, or to enjoin the Government from commencing enforcement actions. Debtors cite no statutory authority for the broad relief they seek. As discussed below, some (but not all) courts have recognized a concept of qualified immunity that may attach to certain actions undertaken by parties to a bankruptcy proceeding—typically, estate fiduciaries—in accordance with the Bankruptcy Court's determinations. To the extent such qualified immunity exists, courts hold that it may be asserted (at most) as an affirmative defense by such a party in a future proceeding. But like any other defense, including other species of qualified immunity, it cannot be the subject of a prospective, fact-free determination by the bankruptcy court that no possible future enforcement actions may be brought at all.

**B. The Bankruptcy Code Does Not Authorize Third-Party Releases, Including Through Exculpation**

20. The Bankruptcy Code provides no authority for the entry of a release of nondebtors by other nondebtors, or to enjoin the Government from pursuing enforcement actions against nondebtors, whether through "exculpation" or otherwise.

21. The general rule is that only the debtor receives a discharge in bankruptcy. 11 U.S.C. § 524(e). No Code provision authorizes the type of third-party release encompassed by the proposed exculpation language here. Third-party releases are only permitted under the Bankruptcy Code specifically in the context of asbestos. *See id.* § 524(g); *accord In re Purdue Pharma, L.P.*, 2021 WL 5979108, at *49.

22. Using the label of "exculpation," or seeking to apply a third-party release principally to conduct occurring in the bankruptcy cases themselves, does not alter the reality that the Code does not authorize such releases. Only one Code provision—section 1125(e)—explicitly contemplates any sort of exculpation, but only for liability under securities law for certain actions relating to soliciting acceptance of a bankruptcy plan. The challenged exculpation provisions are far broader, and are thus tantamount to impermissible third-party releases that go well beyond any exculpation permitted under section 1125(e).

23. Moreover, section 1125(e) provides only an affirmative defense in subsequent litigation, not a bar against suit. The exculpation provisions here would elevate an affirmative defense that a defendant must *prove* with specific facts into a total bar against suit, without the exculpated parties having to put on any evidence—which is not how section 1125(e) operates. *See, e.g.*, *SEC v. Universal Exp., Inc.*, 475 F. Supp. 2d 412, 425-26 (S.D.N.Y. 2007) (Lynch, J.) (noting that defendant bears burden of proof on a defense under section 1125(e), and denying defendant's summary judgment motion on the defense because, *inter alia*, "no reasonable factfinder could

conclude that the securities in question were issued pursuant to the Option Plan and therefore exempted from registration, or even that defendants have raised a genuine issue of fact about whether they were").

24. The provisions of the Code that are often cited as grounding a bankruptcy court's power to enter involuntary third-party releases do not, in fact, grant that power.

25. Section 105(a) does not provide any authority to approve involuntary third-party releases, including exculpation. That is because—as the Second Circuit has acknowledged—section 105(a) does not expand bankruptcy courts' statutory powers. *Metromedia*, 416 F.3d at 142. Indeed, the Circuit has explicitly held that Section 105(a) aids the Court's power to carry out other, specific provisions of the Bankruptcy Code, but it does not create new substantive rights:

> [Section 105(a)] does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity. The equitable power conferred on the bankruptcy court by section 105(a) is the power to exercise equity in carrying out the provisions of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing.

*In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003) (quotation marks and citations omitted); *Metromedia*, 416 F.3d at 142 (citing *Dairy Mart* with approval).

26. Moreover, reading section 105(a) to authorize third-party releases (including exculpation) would contravene a more specific Code section—which the Supreme Court has repeatedly held is impermissible. *Law v. Siegel*, 571 U.S. 415, 421 (2014). Here, section 524 is the sole, specific provision addressing third-party releases, and section 1125(e) is the sole provision permitting exculpation. But the exculpation language here is not an asbestos-related release under Section 524(g) or (solely) a solicitation-related exculpation under Section 1125(e). A general authorization cannot swallow a "more limited, specific authorization" in the Bankruptcy Code. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645-46, 649 (2012).

27. Likewise, section 1123(a)(5) and (b)(6) of the Code do not permit third-party releases. Just like section 105(a), they are generic provisions that simply confirm the court's power to "provide adequate means for the plan's implementation" and "include any other appropriate provision not inconsistent with the applicable provisions of this title."

28. Significantly, labeling a provision as providing "exculpation" does not change the standard. *See, e.g.*, *In re Chemtura Corp.*, 439 B.R. 561, 610-11 (Bankr. S.D.N.Y. 2010) (explaining that "[w]hether they're called 'exculpation provisions' (principally dealing with the post-petition period) or 'third-party releases' (applying more broadly)," exculpation and third-party releases both generally involve claims by nondebtors against other nondebtors).

29. In an exhaustive analysis considering both the statutory text and major precedents from within and outside the Second Circuit, the *Purdue* district court recently held that neither Section 105(a) nor any other provision of the Code authorizes involuntary third-party releases. *See In re Purdue Pharma*, 2021 WL 5979108, at *47-70. As the *Purdue* court summarized,

> Contrary to the bankruptcy judge's conclusion, Sections 105(a) and 1123(a)(5) & (b)(6), whether read individually or together, do not provide a bankruptcy court with such authority; and there is no such thing as "equitable authority" or "residual authority" in a bankruptcy court untethered to some specific, substantive grant of authority in the Bankruptcy Code. Second Circuit law is not to the contrary; indeed, the Second Circuit has not yet taken a position on this question.

*Id*. at *38. Notably, the district court observed that *Metromedia* did not hold that any Code provision authorizes third-party releases: rather, that decision "cautioned that statutory authority for non-consensual non-debtor releases outside of the asbestos context was at best uncertain—and then disposed of the case on other grounds, without identifying what section or sections of the Bankruptcy Code might actually authorize such relief in non-asbestos bankruptcy." *Id.* at *57.

30. There is no relevant distinction between the *Purdue* court's analysis of third-party releases and the exculpation provisions at issue here, because, as noted above, there is no explicit statutory

authority for exculpation—aside from section 1125(e), which this exculpation language far exceeds.

31. Nor does the limitation of exculpation so as not to release claims of actual fraud, gross negligence, or willful misconduct, *see* Proposed Order ¶ 73, permit the third-party release at issue. The Court has no more power to prospectively extinguish claims for ordinary negligence than it does over any other claims.

32. Some courts have held that 11 U.S.C. § 1103(c) provides a degree of qualified immunity as an affirmative defense to an official committee acting in furtherance of its official duties. *See, e.g.*, *Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 514 (S.D.N.Y. 1994). As an initial matter, there is nothing in the text of Section 1103(c) that expressly confers qualified immunity. In any event, even if Section 1103(c) confers some degree of qualified immunity, there is no authority in the Code that permits a court to preemptively extinguish or enjoin claims, including those that might arguably fall within the scope of a bankruptcy participant's qualified immunity. For example, courts have recognized that this type of qualified immunity is an affirmative defense. *See, e.g.*, *Luedke v. Delta Air Lines, Inc.*, 159 B.R. 385, 391-94 (S.D.N.Y. 1993); *In re Tucker Freight Lines, Inc.*, 62 B.R. 213, 215, 218 (Bankr.W.D.Mich.1986) (denying committee members' motion for summary judgment on the issue of immunity). Qualified immunity—in this context or any other—is not a basis for a preemptive injunction against litigation in which it might arguably apply. As one bankruptcy court explained,

> In their briefs, the Official Bondholders' Committee asserted that the Limited Release conforms with the standard of liability already adopted by the courts with regard to suits against official committees. . . . The Official Bondholders' Committee is free to assert what the proper standard of liability at the time it is sued and in front of the court hearing the suit. It would not be proper for this court issue a binding order declaring a standard of liability when the parties that would be affected by such an order have not been given proper notice nor an opportunity to

be heard. What the proper standard of qualified immunity should be is therefore left
for another day.

*In re Envirodyne Indus., Inc.*, 174 B.R. 955, 962 (Bankr. N.D. Ill. 1994) (citations omitted).

33. Likewise, the safe harbor of section 1125(e) is an affirmative defense in subsequent civil litigation—not a total bar to future enforcement actions. *Universal Exp.*, 475 F. Supp. 2d at 425-26. An injunction against suit impermissibly transforms an affirmative defense into a complete bar with no burden of proof.

34. The same could be said for the Court's indication at today's hearing that the exculpation at issue could operate to estop the Government from later challenging acts it authorizes in approving the Plan. Estoppel, like qualified immunity, is an affirmative defense that a party may assert in an appropriate proceeding—not something that a court may grant prospectively to a party, by purporting to enjoin anyone against bringing any and all future proceedings against that party. *See In re Ditech Holding Corp.*, No. 19-10412, 2021 WL 5762951, at *6 (Bankr. S.D.N.Y. Dec. 3, 2021) ("When a defendant raises res judicata or collateral estoppel as an affirmative defense and 'it is clear from the face of the complaint, and consideration of matters which the court may take judicial notice of, that the plaintiff's claims are barred as a matter of law,' dismissal under Rule 12(b)(6) is appropriate." (quoting *Linden Airport Mgmt. Corp. v. N.Y. City Econ. Dev. Corp.*, No. 08 CIV. 3810 (RJS), 2011 WL 2226625, at *3 (S.D.N.Y. June 1, 2011)); *Guan v. City of New York*, 37 F.4th 797, 806 (2d Cir. 2022) ("A defendant has the burden of proving the affirmative defense of qualified immunity.").

35. Moreover, the fact that Congress enacted Sections 1103(c) and 1125(e) shows it was aware of potential concerns in this regard, and elected to offer only measured relief to the relevant parties. A court may not substitute its judgment for that of Congress to expand the relief offered by the Code, even if the Code does not outright forbid such broader relief. As the Supreme Court has

held, courts "cannot alter the balance struck by the statute, not even in rare cases." *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 471 (2017) (citations and internal quotation marks omitted).

36. In any event, the Government is not aware of cases applying bankruptcy-based qualified immunity in a subsequent government enforcement proceeding. And there is good reason to doubt that would be appropriate: where a police or regulatory statute provides a specific statutory liability standard, it cannot be altered by the general language of section 1103(c) that authorizes official committees to take certain enumerated actions in bankruptcy cases (and which does not expressly mention, let alone provide for, qualified immunity).

37. A broad exculpation provision that purports to alter the standard of liability in a subsequent proceeding involving the Government (or state governments) is especially problematic. Among other things, agencies of the United States enforce regulatory schemes that protect the environment and ensure public health and safety. Federal regulators also prevent abuse of workers through unfair labor practices, prosecute claims of fraud against the Government, and oversee antitrust law. The Government collects duties and taxes and ensures taxpayers play by the same rules. The Government deals with contractors to purchase goods and services necessary for national security and defense, and to carry out its many other functions. The substantive law governing each of these areas is different: federal statutes may provide for strict liability, liability for negligence, or some other standard less than or incompatible with the gross negligence or willful misconduct exception Debtors propose here. No authority exists to prospectively limit the Government's powers or claims under such laws.

38. The Government thus parts ways with this Court's analysis in *Aegean*, on which it indicated it would rely to approve the exculpation provisions at issue. In that case, the Court concluded that exculpation was appropriate "to insulate court-supervised fiduciaries and some other parties from

claims that are based on actions that relate to the restructuring." *In re Aegean Marine Petroleum Network*, 599 B.R. at 720. It found a basis for such relief in "the theory that court-supervised fiduciaries are entitled to qualified immunity for their actions." *Id.* Similarly to the analysis the Court provided in the oral argument in this case, the *Aegean* decision provided the Court's view that "[i]f this Court has approved a transaction as being in the best interests of the estate and has authorized the transaction to proceed, then the parties to those transactions should be not be subject to claims that effectively seek to undermine or second-guess this Court's determinations," and thus "[i]n the absence of gross negligence or intentional wrongdoing, parties should not be liable for doing things that the Court authorized them to do and that the Court decided were reasonable things to do. *Id.*

39. The *Aegean* Court acknowledged that "reported case law is thin" on this issue, *id.* at 721, and for good reason. As explained above, the qualified immunity that some courts have concluded applies to certain participants in transactions approved by bankruptcy courts is an affirmative defense, not a prospective bar against prosecution of claims. To the extent a participant in a court-approved transaction is later accused by a Government agency of having violated any law or regulation, that person may, if appropriate, indicate to the appropriate tribunal that the transaction was approved by this Court and argue for qualified immunity on that basis—if appropriate. But one can envision scenarios in which such immunity—again, if it exists—would not be appropriate, even beyond the carve-out for gross negligence and the like. For example, the *manner* in which a participant executes a court-approved transaction may give rise to liability—such as tax or environmental liability—that may not be apparent or determinable from the outline of the transaction provided in the plan documents. Or other events could take place, or additional facts

come to light in the future, that render what may have seemed to be permissible transactions impermissible.

40. The point of this is not to suggest that participants in court-approved transactions must live in constant fear of future government enforcement, but rather that the simple fact of receiving court approval for a transaction is not a lifetime "get out of jail free" card for anything having to do with that transaction. Determinations of whether this Court's approval of the transaction and the individual participant's having followed this Court's instructions are appropriate defenses to an enforcement action must be made on a case-by-case basis, at the appropriate time (once the enforcement action is brought) and before the appropriate tribunal (the one overseeing the enforcement action)—not preemptively by this Court in revising standards of liability or by outright enjoining future enforcement actions.

## C. The United States Has Not Waived Its Sovereign Immunity Over Exculpation or Prospective Releases

41. This Court lacks statutory authority to enter the provisions purporting to exculpate third parties, to release the Debtors from claims involving their post-confirmation conduct, or to enjoin the Government from taking enforcement actions. But application of these provisions to the United States faces a more fundamental problem: Congress has not waived the Government's sovereign immunity in bankruptcy proceedings with respect to Government claims against nondebtors or against debtors for their prospective conduct. This Court therefore lacks subject-matter jurisdiction to enter the challenged provision against the United States.

42. Courts may exercise jurisdiction over the United States only where Congress has provided a waiver of sovereign immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("[T]he terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit.") (internal quotation marks and brackets omitted); *Presidential Gardens Assocs. v. United States ex*

*rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999). Congress can waive the United States' sovereign immunity only through unequivocal statutory language, and may impose conditions on such a waiver. *United States v. Dalm*, 494 U.S. 596, 608 (1990). Waivers of sovereign immunity and their conditions—whether substantive, procedural, or temporal—must be strictly applied against the claimant. *See Millares v. United States*, 137 F.3d 715, 719 (2d Cir. 1998).

43. Congress has waived the United States' sovereign immunity in bankruptcy proceedings only in three limited circumstances: "(1) where the substantive authority for the cause of action arises from the Bankruptcy Code itself; (2) for compulsory counterclaims against government claims; and (3) for permissive counterclaims capped by a set-off limitation." *McGuire v. United States*, 550 F.3d 903, 912-13 (9th Cir. 2008) (citing 11 U.S.C. §§ 106(a)-(c)). None of these applies here.

44. First, the proposed provision does not fall within the sovereign immunity waiver under section 106(a) because, as discussed above, no provision of the Code specifically authorizes nondebtor relief or relief against debtors for post-confirmation conduct—let alone the *unequivocal* authority to grant such relief against the Government.[5] *Cf. Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799, 803 (4th Cir. 2019) ("[S]tatutes waiving sovereign immunity are normally quite clear.").

45. Nor does section 1141, which details the effects of plan confirmation—waive the Government's sovereign immunity in relation to nondebtors and debtors' post-confirmation

---

[5] And neither does section 1123(b)(6), a similar catch-all which permits a Chapter 11 plan to "include any. . . appropriate provision not inconsistent with the applicable provisions of this title," provide any basis for a waiver of sovereign immunity. That provision, like subsection 105(a), provides no separate authority to the Court outside of what specific Code provisions grant. And, in any event, section 1123 is not listed in subsection 106(a) as a statute as to which the Government has waived sovereign immunity. Section 1123 thus does not even suggest, much less unequivocally state, that the United States has consented to nonparty releases in bankruptcy.

conduct. The relevant waiver of sovereign immunity is applicable only insofar as the United States is a "creditor," *see* 11 U.S.C. § 1141(a), which the Code defines as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor," *id.* § 101(10)(a). Accordingly, the Plan can bind the United States only to the extent that it is a creditor. *Holywell Corp. v. Smith*, 503 U.S. 47, 58-59 (1992) ("Even if section 1141(a) binds creditors of the corporate and individual debtors with respect to claims that arose before confirmation, we do not see how it can bind the United States or any other creditor with respect to post-confirmation claims."). With respect to any other governmental function—for example, its exercise of police or regulatory powers against a debtor or reorganized debtor, or its claims of any type against people or entities other than the debtor—sections 1141(a) and 106(a) do not waive the Government's immunity.

46. Second, the nondebtor relief does not fall within the counterclaim exceptions of section 106(b) or (c), since no federal agency has filed proofs of claim against *nondebtors*. While certain federal agencies (including the Internal Revenue Service) have filed proofs of claim against certain debtors in these cases, their participation as creditors exposes the Government only to counterclaims "against" each agency if the counterclaim "is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose," 11 U.S.C. § 106(b), or for setoffs with respect to estate property, *id.* § 106(c). The proposed exculpation concerns neither matter.

47. Moreover, neither *Metromedia* nor any other binding precedent provides separate authority for this Court to enjoin the Government with respect to nondebtors or debtors' post-confirmation acts. The Second Circuit has not considered the application of sovereign immunity to third-party

releases, and thus never held that a confirmed plan may contain nondebtor releases *as against the Government*.

48. Finally, only Congress may waive the Government's sovereign immunity, *see, e.g.*, *Celauro v. IRS*, 411 F. Supp. 2d 257, 269 (E.D.N.Y. 2006) (citing *United States v. Nordic Village,* 503 U.S. 30, 33-34 (1992)), and only through unequivocal statutory language, *see Dalm*, 494 U.S. at 608. Whatever the legal basis for *Metromedia* and similar cases, neither section 106 nor the provisions cited therein waive the Government's sovereign immunity with respect to its potential claims against nondebtors or debtors' post-confirmation acts.

49. In sum, this Court lacks subject matter jurisdiction to grant nondebtor exculpations, prospective debtor releases against the Government, and the broad proposed injunction because Congress has not waived the Government's sovereign immunity for such releases and injunctive relief.

### D. The Court Lacks Constitutional Authority to Issue the Nondebtor Relief or Prospective Debtor Relief

50. The contested relief is also improper because it involves no live case or controversy and thus extends beyond the Court's constitutional authority.

51. Here, although the proposed Plan and Proposed Order define certain categories of actions against nondebtors and Debtors from which they could be exculpated from liability, they do not identify any particular claims against those entities—such as any specific actions against them by Governmental Units. There is thus no present or reasonably contemplated future case or controversy that the proposed exculpation seeks to extinguish. The exculpation language is thus improper because courts "cannot entertain a claim which is based upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Rivera v. Salomon Smith Barney*

*Inc.*, No. 01 CIV. 9282 (RWS), 2002 WL 31106418, at *2 (S.D.N.Y. Sept. 20, 2002) (internal quotation marks omitted).

52. These concerns are particularly acute given the provisions' attempt to enjoin all potential future government enforcement actions related to the Restructuring Transactions. An allegation of a future injury can create standing only where the plaintiff can establish that a threatened injury is "certainly impending," or that there is a "substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quotation marks omitted). Speculation about potential government action is insufficient to establish standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-14 (2013). Where the claimed future injury is a potential law enforcement action, courts require a more specific showing: for example, the plaintiff (as potential future defendant) must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* at 159 (quotation marks omitted). Neither the Debtors nor the other beneficiaries of the exculpation provisions here have attempted to make this showing regarding even the potential for such future law enforcement actions, let alone that there is a credible threat or that they are imminent.

53. This Court thus lacks constitutional authority to enter the exculpation provisions.

**E. The Court Lacks Authority to Issue Nondebtor Releases Because They Exceed the Court's Statutory Jurisdiction**

54. While the Government disputes that bankruptcy courts have the authority to enter nondebtor releases or exculpation, whatever authority that bankruptcy courts do have is limited by the scope of the Court's jurisdiction. The Second Circuit has held that "a bankruptcy court only has jurisdiction to enjoin third-party nondebtor claims that directly address the *res* of the bankruptcy estate." *In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008), *rev'd on other grounds*

*sub nom. Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195 (2009), *jurisdictional holding reaffirmed*

*on remand, In re Johns-Manville Corp.*, 600 F.3d 135, 158 (2d Cir. 2010). Where a party's claim

is not "against an asset of the bankruptcy estate," and the claim does not "affect the estate," a

bankruptcy courts lacks jurisdiction to enjoin it. *In re Johns-Manville Corp.*, 517 F.3d at 65; *see*

*In re Dreier LLP*, 429 B.R. 112, 133 (Bankr. S.D.N.Y. 2010) (no jurisdiction to enjoin matter that

does "not affect property of the estate or the administration of the estate"). Here, the exculpation

provisions provide an impermissible release of *in personam* claims that Governmental Units may

have against non-debtors. *See In re Johns-Manville Corp.*, 600 F.3d at 158 (bankruptcy court "was

not exercising its *in rem* power when it concluded that [the nondebtor's claims against another

non-debtor] were enjoined").

55. The exculpation provisions include potential claims by creditors—including explicitly the

Government—against third parties that relate neither to the property of nor the administration of

the estate, even though they topically relate to the Restructuring Transactions contemplated by the

Plan. These releases could cover a broad swath of potential Government claims unrelated to the

estate's property or administration, including actions by the Government for regulatory violations

related to criminal, tax, antitrust, securities, financial, environmental or other civil liabilities to the

Government resulting from the covered acts or omissions. Because such claims are not against

estate property and do not affect the estate or the Debtors, this Court lacks authority over them.

56. Nor does a bankruptcy court's grant of an involuntary release between nondebtors fit the

rubric of "related to" jurisdiction because it analogizes a peremptory release—without any

proceedings or hearing on the merits of those claims—to the Court's power "to rule on a

proceeding that is pending in front of it." *In re Aegean Marine Petroleum Network, Inc.*, 599 B.R.

at 723. 28 U.S.C. § 157(c) expressly states that "[a] bankruptcy judge *may hear a proceeding* that

is not a core proceeding but that is otherwise related to a case under title 11," 28 U.S.C. § 157(c) (emphasis added)—but a summary release of claims without process is not "hear[ing] a proceeding."

57. Likewise, 28 U.S.C. § 1334(c) indicates that related to jurisdiction pertains to *hearing* a case related to the bankruptcy. *See* 28 U.S.C. § 1334(c) ("nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining *from hearing* a particular proceeding arising under title 11 or arising in or related to a case under title 11.") (emphasis added). As there is no such hearing that has been identified by the debtors there is no proceeding over which the bankruptcy court can exercise "related to" jurisdiction.

58. In addition, many claims brought by or against the Government are subject to independent jurisdictional limitations under federal law.[6] This Court may not order relief contrary to these and other carefully constructed statutory schemes. In sum, the Court should not approve nondebtor relief that reaches to cover matters beyond its jurisdiction, and should therefore deny confirmation of the Plan.

59. Relatedly, if the Court were to approve the exculpation provisions at issue, it would improperly infringe on the jurisdiction of other courts and tribunals before which future enforcement actions may be brought. If for example, the United States, post-confirmation, asserts

---

[6] For example, and as noted above, courts lack authority under most circumstances to "restrain[] the assessment or collection of any tax," 26 U.S.C. § 7421, and the grant of authority in 11 U.S.C. § 505 for this Court to determine tax liability is limited only to Debtors' tax liability (or the liability of its estate), *see Brandt-Airflex Corp. v. Long Island Trust Co. (In re Brandt-Airflex Corp.)*, 843 F.2d 90, 96 (2d Cir. 1988) (holding that 11 U.S.C. § 505 does not apply to the tax liability of nondebtors). Likewise, environmental laws limit judicial jurisdiction over various matters. *See* 42 U.S.C. § 9613(h) (depriving courts of jurisdiction over pre-enforcement environmental disputes). And disputes concerning Government contracts covered by the Contract Disputes Act, 41 U.S.C. § 7101 *et seq*., are subject to a variety of jurisdictional limitations, including on where such claims must be adjudicated and a general prohibition on equitable relief, *see* 28 U.S.C. § 1491.

liabilities in a non-bankruptcy court of competent jurisdiction, *that* court should be empowered to hear and determine all issues raised in the action, including whether the defendant can rely on the confirmation order as an affirmative defense. The exculpation provisions at issue purport to pre-adjudicate this defense by purporting to preclude the Government from even bringing the relevant enforcement action. Adjudication of such a defense is a proceeding over which the bankruptcy court, as a unit of the district court, has at most, "original but not exclusive jurisdiction." 28 U.S.C. § 1334(b) (emphasis added); *see also Stern v. Marshall*, 564 U.S. 462 (2011); *In re Mystic Tank Lines Corp.*, 544 F.3d 524 (3d Cir. 2008) ("No provision of the Bankruptcy Code requires the Bankruptcy Court to hear all 'related to' claims . . . the only aspect of the bankruptcy proceeding over which the district courts and their bankruptcy units have exclusive jurisdiction is 'the bankruptcy petition itself.'") (citing *In re Wood*, 825 F.2d 90, 92 (5th Cir.1987)); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 224-25 (3d Cir. 2004), *as amended* (Feb. 23, 2005) ("Section 105(a) permits a bankruptcy court to 'issue any order, process or judgment that is necessary or appropriate to carry out the provisions' of the Bankruptcy Code. But as the statute makes clear, § 105 does not provide an independent source of federal subject matter jurisdiction."); *In re Skyline Woods Country Club*, 636 F.3d 467 (8th Cir. 2011); *Whitehouse v. LaRoche*, 277 F.3d 568, 576 (1st Cir. 2002). This Court may thus not deprive appropriate future courts of their jurisdiction to hear any enforcement actions or decide whatever affirmative defenses may be asserted therein.

### F.  The Court Lacks Authority to Issue a Final Order on the Nondebtor Relief Provisions Because They Concern Only Non-Core Matters

60. A bankruptcy court's authority to enter an order containing nondebtor relief is also limited by the scope of the Court's power to issue final orders and judgments. In general, this Court may enter final orders only in core bankruptcy proceedings. Because nondebtor exculpation provisions

fall, at most, only within the Court's "related to" jurisdiction, an order containing nondebtor releases (including exculpation) may only be entered by a judge of the United States District Court.

61. This Court's authority to enter final orders and judgments is limited to "core proceedings." 28 U.S.C. § 157(b). In proceedings that are not core, but that are "related to a case under title 11," the Court may submit proposed findings of fact and conclusions of law to the district court. *Id.* § 157(c).

62. Nondebtor releases—including exculpation—are not "core," and this Court therefore may not enter a final order granting them. Generally, a proceeding is "core" it "would have no existence outside of the bankruptcy case." *In re Burger Boys, Inc.*, 183 B.R. 682, 685 (S.D.N.Y. 1994) (citing *In re Kolinsky*, 100 B.R. 695, 701 (Bankr. S.D.N.Y. 1989)). Non-core proceedings, then, "involve disputes over rights that have little or no relation to the Bankruptcy Code, do not arise under the federal bankruptcy law and would exist in the absence of a bankruptcy case." *In re The VWE Grp., Inc.*, 359 B.R. 441, 448 (S.D.N.Y. 2007) (ellipses omitted).

63. It is true that the nondebtor exculpation provisions at issue here are purportedly limited to claims that relate to the bankruptcy cases and the transactions contemplated in the proposed Plan. But this does not make every conceivable exculpated claim "core." For example, a claim by the Government for fraud, employment discrimination, environmental liability, or breach of government contract that is somehow related to a nondebtor's actions in these proceedings would involve two nondebtors. Because such actions would neither affect the property of the estate nor an asset that would have an effect on the estate, they are not "core." *See, e.g.*, *In re Zale Corp.*, 62 F.3d 746, 753-55 (5th Cir. 1995); *see generally In re Combustion Eng'g, Inc.*, 391 F.3d at 224-33. The fact that two nondebtors are both named in a proposed confirmation plan does not change this fact. *See, e.g.*, *In re Digital Impact, Inc.*, 223 B.R. 1, 14 & n.8 (Bankr. N.D. Okla. 1998).

64. Finally, given the broad language of the exculpation provisions, the plan proponents cannot show that they would apply only to actions that "stem[] from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 564 U.S. at 499; *accord In re Purdue Pharma, L.P.*, No. 21 Civ. 7532 (CM), 2021 WL 5979108, at *40. Disputes between two nondebtors obviously will not be resolved in the claims allowance process. And government enforcement regarding conduct of nondebtors that is merely related to a bankruptcy case cannot be said to necessarily "stem[] from the bankruptcy itself" such that the bankruptcy court would be constitutionally empowered to enter a final order in such a case.

65. Indeed, the U.S. District Court for the Southern District of New York recently held that a third-party release may not be entered as a final order by the bankruptcy court. *See In re Purdue Pharma*, 2021 WL 5979108, at *40-42.

### G. The Exculpation Provisions Violate Fundamental Notice Requirements

66. The exculpation provisions also violate the Government's rights to fair notice and an opportunity to present evidence before its claims are extinguished.

67. Although government entities have no right to due process under the Fifth Amendment's due process clause, *see United States v. Cardinal Mine Supply,* 916 F.2d 1087, 1089 n. 3 (6th Cir. 1990), the Supreme Court recognized in *City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 297 (1953), that it is "a basic principle of justice . . . that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights." The exculpation language here violates that requirement both by providing inadequate notice of which claims may be released, and by depriving an opportunity to be heard. For the same reasons, it violates the due process rights of creditors who have such rights.

68. **Lack of adequate notice.** The Government is not currently aware of what specific causes of action could be encompassed by the exculpation provisions. But that may well be because many

of the claims that meet the Plan's requirements for exculpation have not even yet accrued—such as those relating to the Restructuring Transactions. It could also include claims based on conduct that has not yet completed, or which has been hidden by misconduct or fraud.

69. Nor does the exculpation provision comply with other basic requirements of adjudication that are necessary for due process. Specifically, the parties whose claims are exculpated are not served with process. *See Hansberry v. Lee*, 311 U.S. 32, 40-41 (1940) ("It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."). And there will be no determination that this Court has personal jurisdiction over each exculpated claim—also required by due process. *See In re Aegean*, 599 B.R. at 723-24; *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (personal jurisdiction a requirement of the due process clause).

70. **Lack of opportunity to be heard.** Whatever claims might eventually qualify, neither the Government (as potential future plaintiff) nor the proposed released person or entity (as potential future defendant) has any notice of the possible legal or factual bases for these claims. No judicial process respecting these claims—let alone the minimum notice requirements of the Bankruptcy Code—is possible. As the *Purdue* district court recently explained, a third-party release with respect to nondebtor claims has the effect of a final judgment—without a hearing on the merits. *In re Purdue Pharma*, 2021 WL 5979108, at *41 (citing *In re Aegean*, 599 B.R. at 725). Because it is a final adjudication, "all jurisdictional and due process prerequisites for such a final adjudication must be satisfied." *In re Digital Impact, Inc.*, 223 B.R. at 13.

71. Put otherwise, the exculpation provisions violate due process. Causes of action are property rights. *See, e.g.*, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). The exculpation

provisions here deprive the Government of its property interest in causes of action that it did, or could have, brought against the exculpated parties, by preemptively extinguishing those causes of action. The Plan's permanent bar of such claims is tantamount to a final adjudication on the merits of these claims that results in their denial. *In re Purdue Pharma*, 2021 WL 5979108, at \*41; *see also Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995) (holding that plan confirmation order containing releases of claims against third parties constituted final judgment on those claims). But a court—including a bankruptcy court—only has power to enter judgment on a claim when it hears the claim, consistent with the normal rules of procedure. Although the due process clause does not require a hearing on the merits in every civil case, it does mandate "an opportunity granted at a meaningful time and in a meaningful manner . . . for a hearing appropriate to the nature of the case." *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) (internal quotation marks and alterations omitted). The exculpation language here denies that opportunity.

72. For all these reasons, pretermitting the Government's claims against debtors and nondebtors without affording the Government any meaningful opportunity to comprehend the full scope of what may be released, let alone investigate those claims and present evidence as to their potential merit, would violate basic requirements of notice.

## H. The Exculpation Does Not Meet *Metromedia* or Any Other Applicable Standard

73. Even if—contrary to the *Purdue* court's analysis—*Metromedia* stood for the proposition that third-party releases are authorized by the Bankruptcy Court and appropriate in certain circumstances, then nondebtor releases in the form of exculpation would be subject to that strict standard as well. Even under that standard, they should be rejected if the circumstances justifying them are less than "unique." *In re Motors Liquidation Co.*, 447 B.R. at 220 (nondebtor release rejected by court despite including carveout language for "willful misconduct, gross negligence,

fraud, malpractice, criminal conduct, unauthorized use of confidential information that causes damages, breach of fiduciary duty (to the extent applicable), and ultra vires acts," as well as for certain violations of professional responsibility); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 264 n.21 (Bankr. S.D.N.Y. 2007) (nondebtor releases rejected by *Adelphia* court included carve-out for "fraud or willful misconduct").

74. In *Metromedia*, the Second Circuit stated that "[a] nondebtor release in a plan of reorganization should not be approved absent the finding that *truly unusual circumstances render the release terms important to success of the plan*." 416 F.3d at 143 (emphasis added). The Court noted that whether such "truly unusual circumstances" exist requires a court to focus on the following "considerations," *id.*: (1) whether "the estate received substantial consideration" for the release, *id.* at 142; (2) whether "the enjoined claims were 'channeled' to a settlement fund rather than extinguished," *id.*; (3) whether "the enjoined claims would indirectly impact the debtor's reorganization by way of 'indemnity or contribution,'" *id.*; and (4) whether "the plan otherwise provided for the full payment of the enjoined claims," *id.*

75. Debtors have provided no evidence that exculpation of claims against any third parties—and in particular, such claims by Governmental Units—is necessary to the success of their Plan and that the circumstances here are "unique," and thus the exculpation provision must be rejected. Nor have Debtors made any other showing that would justify exculpation of Governmental Units' claims against other non-debtors if *Metromedia* supplies the standard. The estate is not receiving substantial consideration in exchange for the release of the Governmental Unit's claims. The released claims are not channeled, but rather are extinguished outright. There is no argument—nor can there be—that unidentified Governmental Unit claims could impact the debtors'

reorganization through indemnity or contribution. And neither does the Plan provide for full payment of the (unidentified) Governmental Unit claims, or any other.

### **CONCLUSION**

76. For the reasons set forth above, the Government respectfully submits that the Court should strike the improper exculpation language from Debtors' Chapter 11 plan and any order confirming it, to the extent any such exculpation provision applies to the Government, and reserves its right to further object to any amended language proposed to the Court.

Dated: New York, New York
March 6, 2023

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:    */s/ Jean-David Barnea*
JEAN-DAVID BARNEA
PETER ARONOFF
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2679/2697
Email: jean-david.barnea@usdoj.gov
       peter.aronoff@usdoj.gov