Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 22-10943-mew

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    VOYAGER DIGITAL HOLDINGS,

8

9             Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                    United States Bankruptcy Court

12                    One Bowling Green

13                    New York, NY   10004

14

15                    March 7, 2023

16                    2:10 PM

17

18

19

20

21   B E F O R E :

22   HON MICHAEL E. WILES

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  F. FERGUSON

Appellant Appendix ER - 894

Page 2

1    HEARING re Court reading decision into the record.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

* * *
[Pages omitted]

Page 19

1   provisions in the confirmation order related to the

2   governmental entities.  And that proviso basically says

3   provided further, and it goes through all the things that

4   the order is not doing in terms of enjoining governmental

5   entities.  And then says provided further that nothing in

6   this paragraph shall limit the exculpation of the exculpated

7   parties set forth in -- and then we put the exculpation into

8   the confirmation order.  So it's as set forth in Paragraphs

9   61 to 62 of this order.

10            THE COURT:  Let me read for you and for the

11   government my own proposal, all right?  I have to note I

12   believe is narrower than the original plan proposed to which

13   none of these governmental entities objected.  I propose to

14   say the following.  To the fullest extent permissible under

15   applicable law, and without affecting or limiting either the

16   Debtor release or the third-party releases, and except as

17   otherwise specified in the plan, no exculpated parties shall

18   have or incur, and each exculpated party is hereby

19   exculpated from any liability for damages based on the

20   negotiation, execution, and implementation of any

21   transactions approved by the Court.  That's the standard

22   language we have that essentially says Creditors,

23   shareholders, you can't sue saying somebody did something

24   stupid when I've already made a decision that they haven't.

25            In addition, this is back to the language I

1    propose, the plan contemplates certain rebalancing

2    transactions and the completion of distributions of

3    cryptocurrencies to Creditors.  The exculpated parties shall

4    have no liability for and are exculpated from any claim for

5    fines, penalties, or damages based on their execution and

6    completion of the rebalancing transactions and the

7    distributions of cryptocurrencies to Creditors in the manner

8    provided in the plan.  For the avoidance of doubt, the

9    foregoing paragraph reflects the fact that confirmation of

10   the plan requires the exculpated parties to engage in

11   certain conduct, and the fact that no regulatory authority

12   has taken the position during the confirmation hearing that

13   such conduct would violate applicable laws or regulations.

14           Nothing in this provision shall limit in any way

15   the powers of any governmental unit to contend that any

16   rebalancing transaction should be stopped or prevented, or

17   that any other action contemplated by the plan should be

18   enjoined or prevented from proceeding further.  Nor does

19   anything in this provision limit the enforcement of any

20   future regulatory or court order that requires that such

21   activities either cease or be modified or limit the

22   penalties that may be applicable if such a future regulatory

23   or court order is issued.

24           Similarly, nothing herein shall limit the

25   authority of the Committee on foreign investment of the

1   United States to bar any of the contemplated transactions.

2   Nor does anything in this provision alter the terms of the

3   plan regarding the compliance of the purchaser with the

4   applicable laws in the unsupported jurisdictions before

5   distributions of cryptocurrencies occur in those unsupported

6   jurisdictions.

7           I think the language that I have just read is

8   fairly narrow.  And what it essentially says is, you know,

9   I've got a plan in front of me.  One of the things I'm

10  supposed to consider is whether it's proposed in a means

11  that is in compliance with law.  I have a bunch of people,

12  governmental authorities, who've done nothing except hint

13  that maybe there's some issue, but nothing else.  Nobody

14  else made any other opposition.

15          And if and when I confirm the plan, people will be

16  obligated to do what the plan says.  They won't have a

17  choice.  And I think for a variety of reasons that I can say

18  and that I can go into, they're entitled to the protection

19  that I've just said and entitled to know that when they do

20  what I compel them to do in between the time I do so and up

21  until the time somebody else tells them they can't, they

22  aren't going to be subject to some ex-post facto argument

23  that, hey, we didn't tell you at the time even though we

24  could've.

25          We didn't even make up our minds at the time, but

1   guess what?  You're liable for penalties, and that court

2   order wasn't just approval of a plan.  It was a sentence

3   that you, with -- under no volition of your own, would have

4   to do something that was going to subject you to some

5   liability.  I think that would be an absurd situation for

6   anybody to be in, and I think that language is perfectly

7   appropriate under the applicable authorities.

8           Do the governmental authorities on the phone

9   object to the language I just read?

10          WOMAN 1:  Your Honor, this **(Indiscernible) from

11  the State of Texas.  I think that language is excellent.

12  And subject to the deletion that's in paragraphs where we

13  tried to craft such eloquent wording but didn't, I am fine

14  with that wording.  Thank you.

15          THE COURT:  Okay.

16          MR. BARNEA:  Your Honor, this is J.D. Barnea from

17  the U.S. Attorney's Office.  We were not able to get all of

18  that language down.  There may still be some concerns we

19  have with it, but it's certainly an improvement over what

20  we've seen, especially if it's combined with deleting the

21  injunctive language that was in the proposed order

22  previously.  However, we still may have some concerns about

23  it.  I think we would need to see it written.  If there's

24  any way to send it around in writing, we'd appreciate the

25  opportunity to take a look -- a closer look.

1          MS. CORDRY:  And Your Honor, this is Karen Cordry.

2     I represent a number of other states.  We did not formally

3     speak up yesterday because it seemed like the issues were

4     being raised by other folks.  I think the language you have

5     there seems very appropriate.  And I would note that this

6     all came up with a proviso that was only introduced on March

7     3rd before the -- on March 2nd before the SEC said anything.

8     So we think what you have there does go a very long way

9     towards dealing with our concerns while also protecting the

10    (indiscernible) efforts of the people on the -- you know,

11    who can try to put this plan together.

12          I don't think any of us meant to try to bring

13    those kind of damages and so forth.  So if those assurances

14    are helpful, I think that's -- I think the language seems

15    fine.  Again, sort of like the United States, I look --

16    didn't actually get every bit of it down, but it sounded

17    appropriate as I was listening to it.

18          THE COURT:  All right.

19          MR. SLADE:  Your Honor, I have one thing.

20          THE COURT:  Go ahead.

21          MR. SLADE:  I apologize.  Mike Slade for the

22    Debtors.

23          THE COURT:  Yep.

24          MR. SLADE:  There was one sentence towards the end

25    there where you said nothing limits the penalties that can

Page 24

```
 1   be imposed.  I assume what you meant is if there's a future

 2   decision by the government that tells -- gives us rules --

 3              THE COURT:  Yeah, and if there's a --

 4              MR. SLADE:  -- and if we violate those rules --

 5              THE COURT:  If there's an order saying stop doing

 6   this and you violate that order, I'm not exculpating you

 7   from that.

 8              MR. SLADE:  That's right, but they can impose

 9   penalties for the work that we did in reliance on the order

10   before they --

11              THE COURT:  Exactly.

12              MR. SLADE:  -- made their decision.

13              THE COURT:  Exactly.

14              MR. SLADE:  Okay.  We're on the same page.  Thank

15   you, Your Honor.

16              MR. AZMAN:  Your Honor, Darren Azman for the

17   Committee.  I just have three minor comments.  I don't mean

18   nick the language.  I just wanted to clarify something --

19              THE COURT:  Well --

20              MR. AZMAN:  -- given the importance of the issues.

21              THE COURT:  -- we don't -- you know, everybody

22   wants to look at (indiscernible) so let me just say that's

23   what -- I proposed something along those lines recognizing

24   that there may be little tweaks.  But I think that

25   everybody's got the substance of it.
```

Appellant Appendix ER - 902

1          MR. AZMAN:  I'll keep my comment to just one point

2      then --

3          THE COURT:  Okay.

4          MR. AZMAN:  -- just to make sure it's clear.  So

5      you mentioned that the exculpated parties could not be

6      liable for fines, penalties, or damages.  I think it needs

7      to be more broader.  It needs to be any civil or criminal

8      liability.  I don't think fines, penalties, or damages

9      necessarily includes somebody going to jail over it.

10          THE COURT:  Okay.

11          MR. BARNEA:  Your Honor, this is J.D. Barnea

12      again.  It would certainly not be appropriate for this Court

13      to enjoin a criminal prosecution of any person for any

14      reason.

15          THE COURT:  Well, if what you're saying is that

16      having sat on the sidelines and said nothing to me to

17      indicate that there's anything illegal about what these

18      people are going to do, that you want to reserve the right

19      to put somebody in jail for doing a rebalancing transaction

20      that they will have no choice but to do under the order that

21      I entered, then I disagree with you.  I think the very

22      suggestion offends me to no end.  I can't believe that you

23      would even take the position in front of me that you should

24      have that right.  It's preposterous.  It's absolutely

25      preposterous.  If you think something's that illegal, speak

1    up, but don't dare tell me that you kind of want to reserve

2    that right to do that to somebody.  Go ahead, Mr. Azman.

3              MR. AZMAN:  Your Honor, this is not about hiding

4    in the wings and hoping to arrest someone upon them taking

5    some action.  This is about the authority of a bankruptcy

6    court to tell a criminal prosecutor that he's not allowed to

7    do his job.  We are not -- there is no intention here to

8    ensnare people.  We're not aware of anything specific that

9    would be in that direction.  It's simply that it's not

10   appropriate for any court or any bankruptcy court to declare

11   that someone is free from criminal prosecution.

12             If they commit a crime, they shall get prosecuted

13   for it.  If they have a defense that they were acting in

14   reliance on a court order, that may well be an excellent

15   defense, and perhaps that would be a reason not to prosecute

16   them.  But there's no authority that this court has to order

17   a criminal prosecutor not to prosecute someone.

18             THE COURT:  It's a defense to the extent that I

19   say it's a defense, and that's what I'm doing.  You know, I

20   read the Government's paper, which essentially acknowledges

21   that courts have held that people are entitled to qualified

22   immunity for doing what they're approved to do, and

23   especially what they're ordered to do under a court order.

24   But to suggest that I should allow --

25             MR. AZMAN:  Absolutely as an affirmative defense

1   in an enforcement proceeding, but not as a pre-determined

2   bar by a bankruptcy court.

3            THE COURT:  Okay.  Please don't interrupt me in

4   the middle of a sentence.

5            MR. AZMAN:  I'm sorry about that, Your Honor.

6            THE COURT:  What I was trying to say is the

7   suggestion that I should be silent and just leave it for

8   somebody else to decide whether my order has any such

9   qualified effect, or what I myself intend my order to have

10  as its effect, and what I'm telling people to do is

11  ridiculous.  People who will have to do what my order will

12  compel them to do are entitled to know, okay?  And they're

13  entitled to clarity.

14            And some other court who doesn't know bankruptcy

15  is entitled to know what I think people are being compelled

16  to do, and what I think I am authorizing them to do, and

17  what I am in effect, at least on an interim basis until

18  somebody actually steps in and gets an order otherwise, I'm

19  in effect saying by confirming this plan it is okay for you

20  to do this, okay?  And none of you have stepped forward to

21  say otherwise.

22            So people are -- I think I'm the one that ought to

23  be defining that, not some future court.  And leaving it to

24  some future court in complete uncertainty, I don't know how

25  a bankruptcy case could function.  And your arguments that I

1   can't do this are belied completely by the fact that there

2   are literally thousands, thousands of confirmed bankruptcy

3   plans that have done exactly this with no objection by you.

4   You know, you've gotten yourselves all stirred up because

5   the Debtors overreached in what they wanted.  And now you

6   want to object to completely ordinary, reasonable provisions

7   that are well-based in authority to which you haven't

8   objected to any of the other bankruptcy cases that I have

9   ever handled.  So I think your position's preposterous.  Go

10   ahead, Mr. Morrissey.

11         MR. MORRISSEY:  Good afternoon, Your Honor.

12   Richard Morrissey for the U.S. Trustee.  The U.S. Trustee

13   will certainly review the Court's language and hopefully we

14   can come to an understanding.  I just wanted to make two

15   points, Your Honor, about what the Debtors are seeking here

16   with respect to exculpation.  And again, I hope the language

17   that Your Honor just read to us will be consistent with our

18   view.

19         The U.S. Trustee believes that the exculpation

20   provision as written in the plan in these cases was

21   different from the corresponding provision in

22   (Indiscernible).  As a factual matter, my understanding,

23   Your Honor, is that there weren't regulatory actions

24   pending.  And in addition, there were no temporal problems,

25   which is to say that parties in interest were not worried

1   about what exculpated parties might do in the future outside

2   of the Court's purview.  And I think I raised this point

3   yesterday.  So we think it was a broader release.  And Your

4   Honor, another issue is -- that I did not raise --

5            MAN 2:  (Indiscernible) --

6            MR. MORRISSEY:  -- yesterday has to do with --

7            MAN 2:  -- (indiscernible).  You did.

8            THE COURT:  Who's talking -- whoever's talking on

9   the phone needs to mute themselves because you're -- and

10  wait until it's your turn to speak, okay?

11           MR. MORRISSEY:  Thank you, Your Honor -- has to do

12  with actions taken upon it by some counsel, which I think

13  Your Honor used the word "defense" in speaking to Mr. Barnea

14  before.  I think that is certainly an affirmative defense in

15  a future proceeding, but it's an issue as to whether that

16  should be part of the ruling here.

17           THE COURT:  All right.  I'm not purporting in any

18  way to modify to the extent to which reliance on the advice

19  of counsel is or is not a defense for anybody.  I'm simply

20  saying that it's quite abundantly clear to everybody that

21  the plan here contemplates rebalancing transactions and

22  distributions of cryptocurrencies.  Any governmental

23  authority that thinks that those activities are illegal

24  anyway is on notice of them and has had a full opportunity

25  to come in and tell me why they are illegal, the Bankruptcy

1   Code says I shouldn't confirm it if the plan is proposed by

2   any means that would violate any law.

3           I absolutely have been and made clear from the

4   beginning that I was ready to consider any actual objections

5   that there was a violation of law.  I don't have any.  I

6   have hints that somebody might think, for reasons that I

7   couldn't quite explain completely, that the two aspects or

8   one aspect of the sale of VGX and perhaps something to do

9   with Binance.US' business operations might raise regulatory

10  issues, but no idea if that means that the transaction

11  cannot be actually accomplished.

12          And therefore, based on the actual record in front

13  of me, no reason at all to think that what the plan calls

14  for people to do would be illegal.  And so when I make that

15  determination and then any fact by confirming the plan leave

16  people with no authority but to do those things that I have

17  in effect found are okay, I think it's preposterous to

18  suggest that somebody -- people who do it would be

19  personally liable.

20          You know, the alternative is to tell the

21  Government you had your chance, you didn't speak up.  You

22  know, this is what the Debtors were trying to do last week.

23  Therefore, forever shut up, there's nothing illegal about

24  this.  I'm not going to do that.  I have no intention of

25  doing that.  That to me would overstep what is reasonable

1    here.

2            I wish, if the regulators had a problem, that they

3    would've spoken up before me because I have absolutely no

4    desire to set anybody on a course that raises any regulatory

5    concerns.  But for whatever reason, the governmental

6    entities either were unwilling or unable to voice any

7    opposition on those points.  So if something happens, if

8    they unlock their regulatory brakes and figure out that they

9    have some objection, they can try to stop what's going on,

10   I'm not going to prevent them from doing that.  But the idea

11   that they should also then be able to come in and claim any

12   kind of liability for the people who have done what I've

13   ordered them to do and the Government took no action to stop

14   it just seems utterly ridiculous to me.  Okay?

15           MR. MORRISSEY:  Thank you, Your Honor.

16           MS. CORDRY:  Your Honor, this is Karen Cordry

17   again.  If I could just say very quickly one point here

18   which is that a typical exculpation provision does include

19   in there in the language that the Debtor had written in

20   another claim that we're exculpated from all of those sorts

21   of causes of action.  Unless there's a determination of

22   actual fraud, willful misconduct, or gross negligence, which

23   indicates that it's possible to have the basic transaction

24   be approved, but they have some aspect of its being carried

25   out constitute one of those problems.

1          And I think -- and I'm not trying to speak for the

2     United States, but my sense is that that may be the kind of

3     concern that is floating around there, is that the -- that's

4     still -- I mean, it's not like we have been sitting here

5     getting notices of every transaction that goes through in

6     terms of the rebalancing and so forth.  I have known

7     basically from the terms that the overall rebalancing was

8     illegal, but it is possible.  And I think if we use the term

9     "possible" that somebody could do something illegal in the

10    context of that overall approved process.  So I think that's

11    sort of what's floating around out there.

12          THE COURT:  Yeah.  You know, I don't have a

13    problem.  I don't think anybody has a problem with that.

14    Okay?

15          MS. CORDRY:  Yep.  So I think that's kind of where

16    there was still the concern about.

17          THE COURT:  Okay.  All right.  Everybody's going

18    to want to see the language and make little tweaks.  I don't

19    -- I'm not in a position to be able to give it to everybody.

20    I have one copy, which is the copy that I have for the

21    purpose of making my decision right now.

22          MR. MORRISSEY:  Your Honor, Richard Morrissey once

23    again for the U.S. Trustee.  I was going to raise an issue

24    that's separate and apart from confirmation.  I don't know

25    if you wanted me to raise it now or wait until later in the

1    -- later today.

2            THE COURT:  Well, I have a lengthy decision to

3    dictate into the record, and last I heard I had a 5:00

4    deadline.  Where do we stand on the 5:00 issue?

5            MAN 3:  Your Honor, I haven't spoken with my

6    client about it and whether we need more time than that.  I

7    hope not.

8            THE COURT:  We obviously are going to -- because

9    people are going to have to see, if nothing else, the other

10   revisions that I have already told you I want to make to the

11   confirmation order and this particular language.  The idea

12   that I can announce my decision and have an order in the

13   next two hours and ten minutes is just not going to happen.

14           MAN 3:  We'd like to keep things moving along, but

15   what would Your Honor suggest?

16           THE COURT:  I would suggest that people are going

17   to want to -- once I finish my decision, which is going to

18   take a while, people are going to want to see the order, and

19   that you should extend it until 3:00 tomorrow.  Okay.

20           MAN 3:  Let me request that from my client.  In

21   the meantime, we could suggest perhaps sending the language

22   around to the parties via email to the Debtors.

23           THE COURT:  I don't know if anybody --

24           WOMAN 2:  Your Honor, when the attorney for

25   Binance speaks, he has to go near a microphone.  Otherwise

1    the people in Court Solutions can't hear him.

2            THE COURT:  I don't think anybody has the language

3    I just read except for me because I wrote it out for myself

4    here.  I don't -- it's not in anything else I've given to

5    anybody else, so...

6            MAN 3:  Correct.

7            THE COURT:  Okay.

8            MAN 3:  Thank you, Your Honor.  All right.

9            MR. MORRISSEY:  Your Honor, the issue I was going

10   to raise just so it's not a mystery to the Court and the

11   parties has to do with Rule 3020.  The version I have of the

12   proposed order, it's Paragraph 118, Waiver of Stay.  Your

13   Honor, the U.S. Trustee would oppose the waiver of the stay.

14   We think that the 14-day stay should be part of the order,

15   and that Rule 20 should be abided by.  Thank you, Your

16   Honor.

17           THE COURT:  All right.  I understand the

18   Government's position.  When is -- if I don't enter a stay,

19   when is the effective date likely to occur at the earliest?

20           MR. GOLDBERG:  Your Honor, Adam Goldberg for

21   Binance.US.  We would be working to bring the plan effective

22   as quickly as possible.

23           THE COURT:  Okay.

24           MR. GOLDBERG:  I'd (indiscernible) for the Debtors

25   for anything else.

Page 35

1           MS. OKIKE:  Yes, Your Honor.  I think -- Christine

2     Okike for Kirkland and Ellis.  We agree with that.  I do

3     think it's going to take, you know, some time, but we will

4     be working expeditiously to effectuate the plan.

5           MR. KIRPALANI:  Good afternoon, Your Honor.

6     Susheel Kirpalani from Quinn Emanuel on behalf of the

7     Special Committee of the Debtors.  I just wanted to let the

8     Court know, I'm sure you have your own way of wanting to

9     announce things, but I wanted to confirm that Your Honor is

10    aware, and if not I wanted to make Your Honor and all

11    interested parties aware, that we have scaled back the

12    releases.

13          THE COURT:  I saw.

14          MR. KIRPALANI:  And I've got even some additional

15    line item nits to further scale it back because there were

16    things in there --

17          THE COURT:  Okay.

18          MR. KIRPALANI:  -- that I missed.  And so I could

19    read those changes into the record, or I could do it any

20    which way you'd like.

21          THE COURT:  We'll final -- I saw an in-concept

22    approve of what you've done, and we'll get the wordsmithing

23    done as we enter the order.

24          MR. KIRPALANI:  Okay.  Thank you, Your Honor.

25          THE COURT:  Okay.  All right.  I want to announce

* * *
[Pages omitted]